# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MELBA SUE JORDAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-13-111-FHS-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Melba Sue Jordan requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the decision of the Commissioner should be AFFIRMED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on December 17, 1949, and was sixty-one years old at the time of the most recent administrative hearing. (Tr. 66, 712). She has a high school education and has previously worked as a cashier. (Tr. 87, 574). The claimant alleges she has been unable to work since April 8, 2002, because of degenerative disc disease, arthritis, high blood pressure, diabetes, and knee problems. The claimant was last insured on December 31, 2004.

**Procedural History**

On August 26, 2004, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. ALJ Michael A. Kirkpatrick conducted an administrative hearing and found that the claimant was not disabled in a written opinion dated November 29, 2005. (Tr. 14-30). The Appeals Council denied review, but this Court reversed on appeal in Case No. CIV-06-117-SPS and remanded the case to the ALJ for further proceedings. The ALJ conducted a second administrative hearing and again determined that the claimant was not disabled in a written opinion dated June 27, 2008. (Tr. 399-413). The Appeals Council again denied review, but this Court reversed on appeal in Case No. CIV-09-464-SPS and remanded the case for further proceedings. ALJ Osly F. Deramus conducted a third administrative hearing and determined once again that the claimant was not disabled in a written opinion dated

October 21, 2011. (Tr. 557-575). The Appeals Council again denied review, so the October 21, 2011 opinion by the ALJ is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform the full range of medium work as defined in 20 C.F.R. § 404.1567(c), except that she had additional limitations which require that she stoop and climb ramps/stairs only occasionally and never climb ladders, ropes, or scaffolds (Tr. 564, 404). The ALJ concluded that the claimant was not disabled because she could return to her past relevant work of cashier. (Tr. 574).

**Review**

The claimant contends that the ALJ failed to follow the most recent remand from Case No. CIV-09-464-SPS, particularly by failing to properly analyze the medical evidence including the medical opinion of the claimant's treating physician Dr. Tina Cooper. The undersigned Magistrate Judge finds this contention unpersuasive for the following reasons.

The claimant's extensive medical records have been thoroughly documented in the previous ALJ opinions and the earlier District Court opinion. As relevant to this appeal, Dr. Cooper was the claimant's treating physician from the 1990s and well past her date last insured of December 31, 2004. (Tr. 717). The claimant contended in her previous appeals to this Court (Case Nos. CIV-06-117-SPS and CIV-09-464-SPS) that the ALJ

improperly analyzed the medical evidence, including Dr. Cooper's opinion. The Court agreed, observing that the ALJ had erred, *inter alia*, by picking and choosing among the evidence indicating a diagnosis and treatment that point to problems associated with carpal tunnel syndrome to discount Dr. Cooper's findings regarding claimant's handling and fingering limitations. *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted]. The Court also found that the ALJ had erred by rejecting Dr. Cooper's assessment because it was inconsistent with findings made by state agency examining and non-examining physicians without providing a legally sufficient explanation for his determination. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Thus, the ALJ erred in rejecting the treating-physician opinion of Dr. Baca in favor of the non-examining, consulting-physician opinion of Dr. Walker absent a legally sufficient explanation for doing so."), *citing* 20 C.F.R. §§ 404.1527(d)(1), (2), 416.927(1), (2) and Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *2. The Court concluded that the ALJ's errors in evaluating the medical evidence constituted reversible error and the case was remanded with instructions to evaluate the medical opinions of record in accordance with

proper standards. *See* Case No. CIV-06-117-SPS, Docket No. 18, Case No. CIV-09-464-SPS, Docket No. 20.

The Court's instructions to the ALJ on this most recent remand thus required him to analyze the opinion of Dr. Cooper to determine whether it was entitled to controlling weight, and if not, to evaluate the opinion in accordance with the factors set out by the Tenth Circuit in *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003). The ALJ was obliged to follow these instructions on remand, *see Grigsby v. Barnhart,* 294 F.3d 1215, 1218 (10th Cir. 2002) ("Although primarily applicable between courts of different levels, the [law-of-the-case] doctrine and the mandate rule apply to judicial review of administrative decisions, and 'require[ ] the administrative agency, on remand from a court, to conform its further proceedings in the case to the principles set forth in the judicial decision, unless there is a compelling reason to depart.'"), *quoting Wilder v. Apfel,* 153 F.3d 799, 803 (7th Cir. 1998), *see also Brachtel v. Apfel,* 132 F.3d 417, 420 (8th Cir. 1997) ("[I]f the District Court actually found that Brachtel needed to lie down, the ALJ would be bound by that finding."), and has done so. In ALJ Deramus's written opinion, he found that she has the severe impairments of obesity, hypertension, arthritis, left knee chondromalacia, and new onset diabetes mellitus, as well as the nonsevere impairments of carpal tunnel syndrome, depression, and anxiety. (Tr. 559). At step four, the ALJ summarized the claimant's testimony, as well as the available medical evidence. As to Dr. Cooper's records, he noted that she had diagnosed arthritis and prescribed Naproxen for treatment of the claimant's left shoulder and upper back in 2000. The ALJ noted that the claimant visited Dr. Cooper on the date of alleged onset of disability in

April 2002, but notes that the findings were "basically normal," with the exception of tenderness along her cervical spine and thoracic spine. (Tr. 566). The ALJ then summarized the treatment for the claimant's knee, including her 2004 diagnosis of crepitation of the patellofemoral groove area consistent with chondromalacia, and the August 2004 diagnosis of diabetes mellitus. (Tr. 566-567). He further noted that she reported walking long distances with some discomfort even in 2007. He then states, "medical treatment records reveal that during the relevant period claimant received conservative treatment consisting of some modest dosages of medications, periodic recommendations (as discussed supra) to use wrist splints, and general good advice to exercise and follow a diabetic diet." (Tr. 568). He then turned to the September 19, 2005, Medical Source Statement completed by Dr. Cooper, referring to it as a "check-off/fill-in-the-blanks" form. The ALJ noted that a finding of disability is within the province of the Commissioner, not the physician, and found that Dr. Cooper's MSS invaded the province of the fact finder when she completed the form in such a way as to preclude the claimant from all gainful employment. (Tr. 568). Continuing, he found that the MSS was (i) a "dramatic overstatement" because there was no evidentiary support that the claimant could lift no more than ten pounds or stand/walk no more than 30 minutes at a time (ii) not entitled to controlling weight because it was not well supported by clinical or diagnostic techniques or the other medical evidence. (Tr. 568). The ALJ then recited the treating physician factors, the confluence of all these factors, and "the simple fact that Dr. Cooper's opinion has so little actual support in the record," but went on to explain that the MSS cited few credible findings and eroded the supportability of

the opinion, and that the stand/walk limitation was not supported when compared with her own progress notes from the same time frame. (Tr. 569). The ALJ then stated, "[s]ailing directly into the face of redundancy . . . 2007 progress notes reflect that claimant, albeit with some discomfort, was walking long distances [which] is consistent with claimant's walking performance on the May 2, 2006 exercise EKG." (Tr. 569). Additionally, he noted that the claimant had toured Scotland (a "significant pedestrian activity"). (Tr. 569-570). Finally, he noted that Dr. Cooper made little mention of the claimant's carpal tunnel after the completion of the MSS and that even if she had been under such a degree of limitation at the time, "there is no reason to doubt that said degree of limitation was present but for more than brief period(s) of several days or weeks." (Tr. 570). He then noted that Dr. Cooper's MSS was discordant with the opinion of a consultative examiner whose exam was of "close proximity" in time to the MSS but revealed no marked signs or findings. (Tr. 570). After further detailed discussion of the consultative examinations as well as the opinions of the state reviewing physicians, the ALJ found that the claimant could perform medium work. (Tr. 572).

The ALJ is only required to assign controlling weight to the medical opinion of a treating physician if "'the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). But if a medical opinion is not entitled to controlling weight, the ALJ nevertheless must determine the proper weight to give it by analyzing all of the factors set forth in 20 C.F.R. § 404.1527. *Langley*, 373

F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300 and Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996). The pertinent factors include: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins*, 350 F.3d at 1300-01 (10th Cir. 2003) [quotation marks omitted], *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). And if the ALJ does reject a treating physician's opinion, he must provide "specific, legitimate reasons for doing so." *Watkins*, 350 F.3d at 1301 [citations omitted] [quotations omitted]. The ALJ's conclusion "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *quoting* Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5.

The ALJ's treatment of Dr. Cooper's opinion meets these standards. He declined to assigned controlling weight to Dr. Cooper's opinion, and found that her MSS was "without any supportive medical documentation" because: (i) Dr. Cooper's lack of significant follow-up treatment notes did not indicate that the carpal tunnel, even if it was

at the time to the degree noted in the MSS, did not last more than a brief time; (ii) there was very little support for the limitations she indicated in the rest of the medical evidence, including her own conservative treatment history; (iii) she only referred to X-rays indicating the claimant's degenerative joint disease and a diagnosis of mild carpal tunnel syndrome to support her assessed limitations, and further, the x-rays provided in her report provided no radiology report of the back; (iv) evidence indicated that the claimant was walking long distances with some discomfort and was able to complete an exercise EKG stress test indicative of ability to ambulate; (v) follow-up examinations of the claimant's knee in 2004 revealed that she was stable despite pain, and it was alleviated by anti-inflammatory medication; and (vi) Dr. Cooper is a PCP rather than a specialist in orthopedics. (Tr. 565-571). *See, e. g.*, *Griner v. Astrue*, 281 Fed. Appx. 797, 800 (10th Cir. 2008) (noting that "'a treating physician's report may be rejected if it is brief, conclusory and unsupported by medical evidence.'") [unpublished opinion], *quoting Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir. 1988). The Court therefore concludes that the ALJ relied on sufficient evidence in rejecting Dr. Cooper's opinion as to the claimant's functional limitations. Although his characterization of some of the evidence is questionable, *i. e.* referring to the MSS as a "check-off/fill-in-the-blank" form while relying on the state reviewing physician assessments but refusing to acknowledge they are much the same, and using circular reasoning to say that the limitations in the MSS invaded his authority as the ultimate decisionmaker, he made it clear he did not base his ultimate assessment on those reasons. The ALJ's opinion was therefore sufficiently clear for the Court to determine the weight he gave to Dr. Cooper's opinion, as well as

sufficient reasons for the weight assigned. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case.").

The claimant further asserts that the claimant failed to recontact Dr. Cooper for clarification. Although the ALJ may not engage in unsubstantiated speculation to reject a treating physician opinion, *see, e. g., McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) ("In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion."), *quoting Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000), ALJ Deramus did not reject Dr. Cooper's opinion on that basis. Although he made some unsubstantiated inferences with regard to the MSS and Dr. Cooper's opinion as to the claimant's carpal tunnel syndrome (*e. g.*, referring to the carpal diagnosis as an "afterthought" because it was located in a right margin (Tr. 560)), he nevertheless did not base his rejection of Dr. Cooper's opinion on these inferences. If the ALJ had doubts on this point, he could have re-contacted Dr. Cooper to clear it up, *see* 20 C.F.R. § 404.1520b(c) ("[I]f after weighing the evidence we determine we cannot reach a conclusion about whether you are disabled, we will determine the best way to resolve the inconsistency or insufficiency . . . We may recontact your treating physician, psychologist, or other medical source."), but he was under no obligation to do so, as the claimant implies.

Claimant further argues that the ALJ erred in his evaluations of Dr. Black and consultative examiner Steven Rowlan, but this is not borne out by the opinion. The ALJ specifically noted the differences (and similarities) between Dr. Black's statements and Dr. Onaro's consultative examination, and gave reasons for not assessing limitations related to kneeling, crouching, and/or crawling. (Tr. 572). Further, the ALJ noted Dr. Rowlan's opinion and rejected it, not simply because it was outside the relevant time frame by several years, but also because it provided no evidence of severe/marked degenerative changes which would be relevant to a slowly progressing impairment. (Tr. 572). *See Boss v. Barnhart*, 67 Fed. Appx. 539, 542-543 (10th Cir. 2003) ("While this case presents conflicting medical evidence, the record reveals that the ALJ acted within his province to determine the appropriate weight to be attributed to the evidence in order to resolve the conflict."), *citing Casias*, 933 F.3d at 801. The undersigned Magistrate Judge therefore finds no error on the ALJ's part.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 6th day of March, 2014.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma